UNITED STATES DISTRICT COURT

                       CENTRAL DISTRICT OF ILLINOIS

JUAN RODRIGUEZ,

              PLAINTIFF,

       vs.                                          08-1338

ROGER E. WALKER, et al.,

              DEFENDANTS.


                    MEMORANDUM OPINION AND ORDER

       In this suit under the provisions of 42 U.S.C. §1983, the plaintiff claims that the
defendants, in violation of his Eighth Amendment rights, were deliberately indifferent to his
serious medical needs and, in addition, that the corrections defendants were deliberately
indifferent to his safety and failed to protect him.

       The defendants, Alva Rumler, Jill Duhs and Wexford Health Sources, Inc., (medical
defendants) have moved [84] for summary judgment; and the defendants, Ed Huggins, Richard
Booth, Paul Chapin, Dale Massey, David Newell, and Kevin Gilson (IDOC defendants) also
have moved [85] for summary judgment. Those motions together with the plaintiff's responses
are before the court for ruling. The following statement of uncontested facts are gleaned from
the parties' filings.[1]

                                         Facts

       The plaintiff, Juan Rodriguez, is an inmate of the Illinois Department of Corrections,
(IDOC), held at the Illinois River Correctional Facility near Canton, Illinois. On July 5, 2008, at
or about 7:30 p.m. Rodriguez was attacked and injured by his cell mate, one Tony Abernathy.
Rodriguez received a severe head injury in the altercation and was knocked unconscious to the
cell floor. Jennings, an inmate who was seated outside the cell at a nearby table, had his attention
called to Rodriguez's cell by another inmate.

---

[1] The court comments that the filings were not models of clarity. The plaintiff did not
marshal statements of fact that directly contradicted the facts that were relied upon by the
defendants. The filings did not create issues requiring trial.

1

Jennings went to look and saw Rodriguez lying on the cell floor. Jennings then notified the desk sergeant who summoned the shift lieutenant, the defendant, Massey.

## Serious Medical Need

When Massey arrived at the cell he found that Rodriguez had a significant bleeding cut on his head. At or about the same time the defendants, Rumler and Duhs, two nurses at Illinois River Correctional Center, arrived at the cell. Massey, Rumler and Duhs attended to Rodriguez's head wound and applied direct pressure to the wound to try and staunch the bleeding. Apparently, Massey applied the direct pressure to the wound and whether he used a T shirt at first and then a bandage provided by the nurses is not really significant. The point is the named defendants responded promptly and endeavored to assist Rodriguez.

In the interim, an ambulance had been summoned. Inmate Jennings says that the ambulance arrived within five or ten minutes after the staff was alerted to Rodriguez's condition. The emergency medical technicians from the ambulance took charge of Rodriguez. He was placed on a transport board, put in a neck brace, and transported to Graham Hospital, Canton, Illinois. All these things took place within a period of about forty minutes. At Graham Hospital, Rodriguez was examined by an emergency room medical doctor, Dr. Quinones, who ordered Rodriguez transferred to St. Francis Medical Center in Peoria, Illinois.

The records of the Fulton County Emergency Medical Association show that a call for an ambulance was received at 7:37 p.m. The ambulance arrived at Illinois River at 7:42 p.m. and the EMT's were in contact with Rodriguez at 7:45 p.m. and worked on him for seven minutes. At the end of that time Rodriguez was transported to Graham Hospital, where he arrived at 8:08 p.m.

## Failure to Protect

With regard to Rodriguez's claim that the IDOC defendants failed to protect him and were deliberately indifferent to his safety, the following facts are uncontested or else the plaintiff has failed to come forward with evidence to make a prima facie showing of his claims.

While Rodriguez claims he filed two grievances concerning his fear of Abernathy, he cannot produce copies of those grievances and any institutional records of such grievances are non-existent, both at the correctional facility level and at the IDOC administrative offices in Springfield. The only grievance by Rodriguez the defendant, Huggins, recalls is a complaint about property.

Rodriguez's claims against Gilson, the Warden at Illinois River are failure to supervise his subordinates and failure to enforce institutional rules. No evidence has been tendered that would tend to show that Gilson was aware of Rodriguez's claim of fear of Abernathy or that Gilson had anything to do with Rodriguez's medical treatment. In short, there is no evidence about Gilson being directly and personally involved with any of the occurrences in the case or having personal

2

knowledge that Rodriguez was in imminent danger..

The plaintiff's response to support the proposition that the corrections personnel were aware of the danger from Abernathy is the claim that Rodriguez told Huggins, a grievance officer, and a list of other inmates about his fears. Huggins flatly denies the claim and, of course, telling other inmates would not constitute notice to the defendants that Rodriguez was in danger from Abernathy.

As to Massey and Booth, the two lieutenants, there is an absolute failure to tender evidence that they were aware of a likelihood that Abernathy would attack Rodriguez. The court is left, therefore, with ho evidence of advance warning or knowledge on the part of the two lieutenants that an attack would likely occur.

## APPLICABLE LEGAL PRINCIPLES

### Summary Judgment

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 17, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

### Serious Medical Need

Deliberate indifference to a serious injury or medical need violates a prisoner's rights under the Eighth Amendment to be free from cruel and unusual punishment. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001), *citing Estelle v. Gamble*, 429 U.S. 153, 182-83 (1976). The subjective component (deliberate

3

indifference) does not encompass negligence or even gross negligence. *Id.*, *citing Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).

## Inmate Safety

Prison officials must "'take reasonable measures to guarantee the safety of the inmates.'" *Boyce v. Moore*, 314 F.3d 884, 887 (7th Cir. 2002), *citing Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)(other citations omitted). However, to succeed, the plaintiff must show that a "substantial risk of serious harm" existed and that the guard subjectively disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). The plaintiff must show that he "was at serious risk of being harmed [and the defendants] decided not to do anything to prevent that harm from occurring even though [they] could have easily done so." *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1988). Liability attaches under the Eighth Amendment when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Actual notice of a specific threat or risk is necessary to prove a defendant knew of the risk and cannot be imputed through a generalized knowledge of danger or vague complaints. *Case v. Ahitow*, 301 F.3d 605 (7th Cir. 2002)(defendants are liable if they "really knew–not just should have known" of serious danger which could have easily been prevented); *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)(plaintiff's statement to officers that he was "having problems" and needed to be moved did not put sheriff on actual notice of specific risk of sexual assault); *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997)(summary judgment granted to defendants where plaintiff did not specifically seek protection from inmates who assaulted him, even though he had been assaulted before by different inmates).

## ANALYSIS

Taking the facts in the light most favorable to the plaintiff, the defendants Massey, Rumler, Duhs and Wexford are entitled to summary judgment on the claim of deliberate indifference to a serious medical need. Rodriguez certainly had a serious medical need, but the facts are unequivocal that the named defendants responded to that need as soon as they became aware of it. They, or other staff personnel in the institution, immediately sent for an ambulance. One arrived within ten minutes. In the interim, the named defendants attended to Rodriguez keeping him quiet and attempting to staunch his bleeding. If they did a poor job or were grossly negligent, liability cannot attach under §1983. Within a quarter of an hour of discovering Rodriguez's plight, he was in the care of emergency medical technicians and on his way to a hospital emergency room. No reasonable trier of fact could conclude that the named defendants were deliberately indifferent to Rodriguez's serious medical need. As to Wexford, no possible theory of liability is advanced except that Rumler and Duhs were employees. *Respondeat superior* is not a basis for liability under §1983. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001), *citing Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

The same can be said of the claim of actual notice of a serious risk of harm to Rodriguez and failure to take steps to prevent it. The affidavit of Juan Delgado that a week before the assault, he filed two request slips for Rodriguez for transfer to a new cell because "Juan did not feel safe with his present cellmate" is not sufficient evidence against any of the named IDOC defendants that would prove actual notice of a specific risk of impending violence. *Cf Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997). The same is true of the affidavit of Luis F. Montoya who offers no specific facts on personal knowledge of any defendant having subjective notice of impending violence. Rodriguez' answer to interrogatories are not evidence since he has no personal knowledge of what took place after the assault and in his deposition said he didn't know any of the defendants or why they had been named in the case.

The plaintiff relies on what is denominated the "fight or flight" policy. The court struggles to understand how that would prove subjective knowledge of impending violence to Rodriguez by Abernathy. Succinctly, it just doesn't.

It is therefore ordered that:

1. Pursuant to Fed. R. Civ. Pro. Rule 56, the defendants' motions for summary judgment [84] and [85] are allowed.
2. The clerk is directed to enter judgment in favor of the defendants and against the plaintiff.
3. The case is terminated and the parties shall bear their own costs.
4. Although his lawsuit is dismissed, the plaintiff is still obligated to pay the filing fee in full. *See* 28 U.S.C.A. § 1915(b)(1). The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the trust fund office. Release from incarceration does not relieve the plaintiff's obligation to pay the filing fee in full. The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.
5. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal.

Enter this 14th day of February, 2011.

**\s\Harold A. Baker**
_____
Harold A. Baker
United States District Judge